UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBRA RHODES, GLORIA MOUNGER,
THOMAS WILLIAMS, LAURA DENNIS,
VIVIAN WORDLAW, and for all similarly
situated voters of the Thirteenth Congressional
District in the State of Michigan,
         *Plaintiffs,*

v.

RICHARD D. SNYDER, in his official capacity as
Governor of the State of Michigan,
         *Defendant*.

Case No.: 17-cv-14186
Judge: Hon. Mark Goldsmith

_____

Michael A. Gilmore, Esq.
1706200054 (MD)
**Law Office of Michael Gilmore**
P.O. Box 211156 [in re:special election]
Detroit, MI 48221
Gilmore.Esq@gmail.com
(313) 231-3329
*Attorney for the Plaintiffs*

Denise C. Barton (P41535)
Heather S. Meingast (P55439)
Assistant Attorneys General
*Attorneys for Defendant*
P.O. Box 30736 Lansing, MI 48909
(517) 373-6434

_____

**MOTION FOR PRELIMINARY INJUNCTION AND MEMORANDUM OF LAW IN SUPPORT THEREOF**

_____

The undersigned counsel certifies that counsel communicated in writing with

opposing counsel on February 31, 2018, explaining the nature of the relief to be sought by

way of this motion and seeking concurrence in the relief; opposing counsel thereafter expressly denied concurrence on January 1, 2018.

Plaintiffs, pursuant to Fed. R. Civ. P. 65, respectfully move for preliminary injunctive relief requiring that Defendant Rick Snyder:

(1)     cease the discriminatory application of Defendant's new and contradictory interpretation of Article 1, Section 2, Clause 4 of the United States Constitution, creating an 11-month delay in filling the vacancy in the majority-Black 13th Congressional District;

(2)     apply the same interpretation of Article 1, Section 2, Clause 4 of the United States Constitution that resulted in the 2012 timely, real, and actual special election to fill the 6-week vacancy in the majority-White 11th Congressional District;

(3)     issue an official call for a timely, real, and actual special election for as soon as possible to fill the vacancy in the U.S. House of Representatives in Michigan's 13th Congressional District, withstanding 45 days to deliver ballots to military and overseas voters[1];

(4)     cease the discriminatory abridgement or denial of the 13th Congressional District citizens' Rights to Vote, Congressional Representation, and Political Expression, absent Due Process; and

(5)     such other and further relief as the Court may deem just and proper.

Pursuant to Rule 65(c), Plaintiffs request that security for this injunction be set at a minimal rate of $50.00 because this is public interest litigation.

---

1. MCL 168.759a (5)

**MEMORANDUM IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION**

1. TABLE OF AUTHORITIES..................................................................................4

2. INTRODUCTION................................................................................................5

3. FACTS..................................................................................................................7

4. AURGUMENTS

5. PLAINTIFFS ARE ENTITLED TO PRELIMINARY INJUNCTION...............8

   1. PLAINTIFFS HAVE A SUBSTANTIAL LIKELIHOOD OF

      SUCCESS OF THE MERITS................................................................8

   2. PLAINTIFFS ARE LIKELY TO SUFFER IRREPARABLE.................9

      HARM OUTWEIGHING ANY HARM TO DEFENDANT

      IN THE ABSENCE OF INJUCTIVE RELIEF.......................................9

   3. THE PROPOSED INJUNCTIVE RELIEF WOULD SERVE

      THE PUBLIC INTEREST....................................................................10

   4. CONCLUSION....................................................................................10

CERTIFICATE OF SERVICE...................................................................................12

## TABLE OF AUTHORITIES

McCutcheon v. Fed. Election Comm'n, 134 S. Ct. 1434..................................................5

Wesberry v. Sanders, 376 U.S. 1......................................................................................5

Reynolds v. Sims, 377 U.S. 533.......................................................................................5

American Civil Liberties Union of Ohio v. Taft, 217 F. Supp. 2D 842..........................6

Valley Community Preservation Comm'n. v. Mineta, 373 F.3d 1078............................8

Elrod v. Burns, 427 U.S. 347......................................................................................9, 10

Overstreet v. Lexington-Fayette Urban County Gov't, 305 F.3d 566.........................9, 10

Garnett v. Renton Sch. Dist. No. 403, 987 F.2d 641.......................................................9

Coleman v. Bowerman, 2012 U.S. App. LEXIS 6871....................................................9

Touchston v. McDermott, 234 F.3d 1133......................................................................10

Project v. Shelley, 334 F.3d 882.....................................................................................10

Miller v. Blackwell, 348 F. Supp. 2D 916.....................................................................10

Charles H. Wesley Educ. Found., Inc. v. Cox, 408 F.3d 1349......................................11

Deja vu of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County, 274 F.3d 377........11

Hunter v. Hamilton County Br. Of Elections, 635 F.3d 219.........................................11

Other Authorities

Art. 1, Sec. 2, Clause 4 of the federal Constiution..........................................................5

MCL 168.759a (5)............................................................................................2

## INTRODUCTION

This case seeks to protect the right to vote and the right to be represented in Congress of the citizens of Michigan's 13th Congressional Distrist. Plaintiff merely seek to be provided equal protection under the laws as granted to 11th Congressional District in 2012. "There is no right more basic in our democracy than the right to participate in electing our political leaders." McCutcheon v. Fed. Election Comm'n, 134 S. Ct. 1434, 1440-41 (2014). Because voting is the fundamental building block of political power, "[o]ther rights, even the most basic, are illusory if the right to vote is undermined." Wesberry v. Sanders, 376 U.S. 1, 17 (1964). Restrictions on voting rights thus "strike at the heart of representative government" and warrant the closest attention and protection from the courts. Reynolds v. Sims, 377 U.S. 533, 555 (1964).

The Equal Protection clause of the U.S. Constitution affords citizens the right to be treated indiscriminately in the application of the law. Applying the Equal Protection in this case—just as it has been applied by federal courts for decades—requires the issuance of a preliminary injunction. Following the vacancy in the U.S. House of Representative, created by the retirement of John Conyers, Jr., Defendant issued statement that indicated he would direct the special election to fill the vacancy would be held on the same date as the regular election, creating a vacancy in the seat of atleast 11 months. This substantial holdover of the vacancy has denied Black and other minority citizens of the Detroit-area voting district of their right to vote and right to be represented in Congress by a duly-elected representative per Art. 1, Sec. 2, Clause 4 of the federal Constiution. Moreover, Defendant instituted a timely, real, and actual special election in the 2012 to fill a vacancy in the 11th Congressional District of of approximately 6 weeks; a starke difference from the expansive 11-month delay imposed here. The two districts are very distinct in their composition.

The 13th Congressional District is 65% Black and minority, $27,000 median income, and majority Democratic. The 11th Congressional District is 82% White, $70,000 median income, and majority Republican. Quickly filling a 6-week vacancy in the 11th Congressional District while creating a substantial delay of 11 months in the 13th Congressional District, fails to meet the requirement of Equal Protection of the laws. A straightforward application of Equal Protection under the federal Constitution requires that Defendant's delay be enjoined.

Defendant does not (because he cannot) dispute that the delay in the 13th Congressional District imposes disproportionate burdens on African Americans citizens when compared to the prompt filing of the vacancy in the majority-White 11th Congressional District. Defendant has an unfortunate history of racial discrimination in denying democracy and human rights to urban areas, and that same denial is present in this case. Under the statute and governing case law, these facts are enough to establish an Equal Protection violation, and the Court should enjoin the defendant's delay on that Constitutional basis alone.

Here, Defendant cites (I) the expense of voting; as well as (2) giving candidates time to prepare for election, as his reason for such a substantial delay. The district will be electing a new member in November, regardless of Defendant's special election date to fill the remainder of what will then be a two-month term on the same ballot. Hence, candidate's will have time to prepare for a November election for a January assumption of office, inspight of Defendant's substantial delay, rendering Defendant's second reason void. Furthermore, courts have already decided that the "fact that a special election involves substantial cost could not, in and of itself, excuse compliance with a constitutional mandate." American Civil Liberties Union of Ohio v. Taft, 217 F. Supp. 2D 842 (2002), at 851. Contrastly, in the timely, real, and actual special election of the 11th Congressional District, Defendant bent over backwards to cite and meet the requirement of the federal

6

Constitution. In attempting to justify his discriminatory application of the law this case, neither the federal Constitution nor any other legal requirements that Defendant is bond to, has been mentioned once.

## FACTS

**Plaintiffs** Debra Rhodes, Gloria Mounger, Thomas Williams, Laura Dennis, and Vivian Wordlaw are African-American citizens of the 13th Congressional District who regularly exercise their right to vote and simply believe that their rights are being denied.

**Defendant** Rick Snyder is the governor of the State of Michigan. He assumed office January 2011 and has serviced as governor continuously ever since. He is a member of the Republican Party.

**11th Congressional District Special Election** was held in Michigan on September 5, 2012 (exclusively and special primary) and Novermber 6, 2012 (special general) following the resignation of Republican Congressman Thaddeus McCotter on July 6, 2012. The 11th Congressional District 732,690 residents are 82% White, $79,805 median annual income[2], and had, at that time, elected its most recent Member of Congress, a Republican, by 59.2%[3]. The 11th Congressional District special election was called by Defendant, to timely ensure that the district was represented after its Republican nominee had resigned from Congress. Had Defendant not instituted the exclusive special election, the seat would have been vacant for a mere 6 weeks.

**13th Congressional District Special Election** has been announced, by Defendant, to be scheduled on the same dates as the regular election dates, August 7 and November 6, to fill the 13th Congressional District vacancy of Democratic Member of Congress John Conyers, Jr., who retired effective December 5, 2017. The 13th Congressional District 658,383 residents are 55% African

---

[2] 2016 American Community Survey 1-Year Estimates
[3] State of Michigan election data

American and 9% minority, with a median income of $33,995 annually. The district elected its most recent Member of Congress in 2016, a Democrat, by more than 77%. Defendant has scheduled both the primary and general election, on the same non-exclusive dates as the regular election, creating an 11-month vacancy.

## PLAINTIFFS ARE ENTITLED TO PRELIMINARY INJUNCTION

Preliminary relief is generally appropriate if a movant can demonstrate "(1) a substantial likelihood of success on the merits of the case; (2) irreparable injury to the movant if the preliminary injunction is denied; (3) the threatened injury to the movant outweighs the injury to the other party under the preliminary injunction; and (4) the injunction is not adverse to the public interest." Valley Community Preservation Comm'n. v. Mineta, 373 F.3d 1078, 1083 (10th Cir. 2004) (citation omitted).

As explained herein, Plaintiffs can establish all of these requirements for a preliminary injunction. Plaintiffs' motion is appropriate notwithstanding Defendant's motion for dismissal. Although Plaintiffs plans to submit an amended complain in response to Defendant's 12(b)6 motion, pursuiant to Fed. R. Civ. P. 15(a)(2), plaintiff will seek a consolidated proceedings.

**1. Plaintiffs Have More Than a Substantial Likelihood of Success on the Merits.**

The Equal Protection clause requires that voters be afforded equal participation in the election process. "a citizen has a constitutionally protected right to participate in elections on an equal basis with other citizens in the jurisdiction." Dunn v. Blumstein, 405 U.S. 330, 336 (1972). Defendant's practice in discriminately interpreting Michigan's law granting the Governor discretion in determining the dates for special U.S. House elections in the 13th Congressional District, as opposed to the timely, real, and actual special election in the vastly different 11th Congressional

District is a clear violation of the Equal Protection rights of every citizen of the 13th Congressional District. The impact of discrimination in this case seems to be of first impression, in regard to calling special elections. However, where contraditory and discrimnary interpretations of a non-discriminatory laws exist, judicial precident is not silent in determining that "states cannot abridge rights granted by federal law." Garnett v. Renton Sch. Dist. No. 403, 987 F.2d 641 (9th Cir. 1993). The Equal Protection Clause "requires that similarly situated persons be treated equally."Coleman v. Bowerman, 2012 U.S. App. LEXIS 6871 at *4 (6th Cir.Apr. 4, 2012) (internal citations omitted). Defendant has failed to treat the minority 13th Congressional District in a manner that even begins to appear as equal to his treatment of the 11th Congressional District.

2. **Plaintiffs Are Likely To Suffer Irreparable Harm Outweighing Any Harm to Defendant in the Absence of Injunctive Relief.**

The unconstitutional restriction to Plaintiffs, and other similarly situated individuals will create irreparable harm. The district has already been denied a voice in over 100 votes that have gone through the U.S. House of Representatives, including the $1.5 trillion tax relief bill. Social programs that are relied on heavily by citizens in the 13th Congressional District are threatened everyday in this political climate. The Childrens Healthcare Insurance Program, affecting 9 million children, has already expired and re-enacted for a mere 2 months under the current U.S. House. It is beyond clear that districts, such as Michigan's 13th, are under attack and need as many representatives as possible. Althought the taxes of providing elections and having a representative have already been collected with no rebate in sight, Defendant has denied every citizen of a vote to fill such an essential seat. As stated above, the right to vote is the most fundamental and valued form of political expression. The loss of such rights unequestionably constitutes irreparable injury per se. Elrod v. Burns, 427 U.S. 347 (1976). "[A] plaintiff can demonstrate that a denial of an injunction will cause irreparable harm is the claim is based upon a violation of the plaintiff's

constitutional rights." Overstreet v. Lexington-Fayette Urban County Gov't, 305 F.3d 566, 578 (6th Cir. 2002).

The violation of a citizen's right to vote is the quintessential injury justifying an injunction. See, e.g., Touchston v. McDermott, 234 F.3d 1133, 1158-59 (11th Cir. 2000) ("[B]y finding an abridgement to the voters' constitutional right to vote, irreparable harm is presumed and no further showing of injury need be made.") Southwest Voter Registration Educ. Project v. Shelley, 334 F.3d 882, 907 (9th Cir. 2003) ("Abridgement or dilution of a right so fundamental as the right to vote constitutes irreparable injury.") (citation and internal quote marks omitted); Williams v. Salerno, 792 F.2d F.2d 323, 326 (2s Cir. 1986) (concluding that unjustified infringement of the right to vote constitutes "irreparable harm"); Miller v. Blackwell, 348 F. Supp. 2D 916, 922 (S.D. Ohio 2004) ("Because this Court has found that the Defendants' challenged actions threaten to impair both Plaintiffs' constitutional right to due process and constitutional right to vote, the Court must find that Plaintiffs will suffer an irreparable injury if the temporary restraining order does not issue.").

3. **The Proposed Injunctive Relief Would Serve The Public Interest**

The proposed interim relief serves the public interest. "Protecting an individual's right to vote is without question in the public interest." Charles H. Wesley Educ. Found., Inc. v. Cox, 408 F.3d 1349, 1355 (11th Cir. 2005). "[I]t is always in the public interest to prevent violation of a party's constitutional rights." Deja va of Nashville, Inc. v. Metro. Gov't of Nashville & Davidson County, 274 F.3d 377, 400 (6th Cir. 2001) (citation omitted). See also Hunter v. Hamilton County Br. Of Elections, 635 F.3d 219, 244 (6th Cir. 2011) ("Members of the public...have a strong interst in exercising the fundamental political right to vote [and] [t]hat interest is best served by favoring enfranchisement and ensuring that qualified voter' exercise of their right to vote is successful") (citation omitted).

**CONCLUSION AND RELIEF SOUGHT**

10

Bearing in mind the court's heavy docket, Plaintiffs ask that court to give this matter expedited attention, given the imminence of the election, political climate, and the rights to vote and be represented in Congress. Plaintiffs respectfully request, for the reasons stated above, that the court grant the requested preliminary injunction against the Governor's delay in the 13th Congressional District special election. In order to effectuate proper and meaningful relief, it will be necessary for a Defendant at instruct the Wayne County Clerk to hold a special election as soon as possible, withstanding 45 days to accomodate military and overseas ballots.

Respectfully submitted,

/s/ Michael A. Gilmore
Michael A. Gilmore, Esq.
1706200054 (MD)
**Law Office of Michael Gilmore**
P.O. Box 211156 [in re:special election]
Detroit, MI 48221
Gilmore.Esq@gmail.com
(313) 231-3329
*Attorney for the Plaintiffs*

Dated: February 2, 2012

Certification of Service

      I hereby certify that I electronically filed the foregoing document with the Clerk of the Court using the ECF system on this 2nd day of September, which will send notice of this filing to all register parties via electronic transmission, and that I served that document by email and by First Class Mail upon:

Rick Snyder
Governor of Michigan
PO Box 30013
Lansing, MI 48909

Denise C. Barton (P41535)
Heather S. Meingast (P55439)
Assistant Attorneys General
*Attorneys for Defendant*
P.O. Box 30736 Lansing, MI 48909
(517) 373-6434


/s/ Michael A. Gilmore
Michael A. Gilmore, Esq.
1706200054 (MD)
**Law Office of Michael Gilmore**
P.O. Box 211156 [in re:special election]
Detroit, MI 48221
Gilmore.Esq@gmail.com
(313) 231-3329
*Attorney for the Plaintiffs*

Dated: February 2, 2012