UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

DEBRA RHODES, GLORIA
MOUNGER, THOMAS WILLIAMS,
LAURA DENNIS, VIVIAN
WORDLAW, and for all similarly situated       No. 2:17-cv-14186
voters in the Thirteenth Congressional
District in the State of Michigan,            HON. MARK A. GOLDSMITH

    Plaintiffs,                           MAG. MONA K. MAJZOUB

v

                                          **DEFENDANT GOVERNOR**
RICHARD D. SNYDER, in his official          **SNYDER'S SUPPLEMENTAL**
capacity as Governor of the State of              **BRIEF**
Michigan,

    Defendant.
_____/
Michael A. Gilmore
Attorney for Plaintiffs
Law Office of Michael Gilmore
9300 Corporate Blvd, Ste 1102
Rockville, MD  20850
313.231.3329
Gilmore.esq@gmail.com

Denise C. Barton (P41535)
Heather S. Meingast (P55439)
Assistant Attorneys General
Attorneys for Defendant
P.O. Box 30736
Lansing, Michigan  48909
517.373.6434
_____/

# DEFENDANT SNYDER'S SUPPLEMENTAL BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION

Bill Schuette
Attorney General

Heather S. Meingast (P55439)
Denise C. Barton (P41535)
Assistant Attorneys General
Attorneys for Defendant
P.O. Box 30736
Lansing, Michigan  48909
517.373.6434
Email:  meingasth@michigan.gov

Dated:  March 19, 2018

## INTRODUCTION

In his initial brief and at the hearing on March 15, Governor Snyder argued that the doctrine of laches applies to bar Plaintiffs' extraordinary request that this Court order a new election date for the special primary in the 13th District. For laches to apply, the Governor must show a lack of diligence by the Plaintiffs, and prejudice to the Governor. *Gelineau v. Johnson*, 896 F. Supp. 2d 680, 684 (W.D. Mich. 2012). He has clearly done both. As explained below and in the attached affidavit from Ms. Malerman, changing the date of the special primary election will impose significant burdens[1] on the local units of government within the 13th District who would be charged with conducting a new special primary election should the Governor be ordered to issue a new election call.[2]

## ARGUMENT

In Plaintiffs' proposed order, they request that the Court order a special primary election be held within 50 days of the date the order is signed, and that the special general election be held on August 7, 2018. Alternatively, they request the

---

[1] Defendant will not reiterate his argument on the injunction factors here, but notes that for the same reasons, the "harm to others" injunction factor weighs in favor of Defendant.

[2] At the hearing, this Court ordered Defendant to file a supplemental brief "explaining the burden that Plaintiffs' newly proposed election schedule would cause." The Court anticipated that Defendant's brief would be accompanied by an additional declaration from Ms. Malerman.

1

Court choose its own dates for holding the two special elections. (Doc. 15, proposed order, Pg ID 255-256).[3]

The 50-day window and the possibility of other alternative dates were discussed through the testimony of Senior Election Law Specialist Melissa Malerman at the hearing. Ms. Malerman testified that attempting to squeeze in a special primary election between the May 8, 2018 election date and the August 7, 2018 election date would be extremely difficult, if not impossible to do, without violating state or federal statutory election deadlines. To assist the Court in further understanding the complexity of the elections process and the various deadlines associated with attempting to hold a stand-alone special primary election between May and August, as discussed by Ms. Malerman, Defendant submits a second affidavit from Ms. Malerman, attached as Exhibit 1.

Ms. Malerman's affidavit describes in detail the various statutory election deadlines, including the Uniformed and Overseas Civilian Absentee Voting Act (UOCAVA), 52 U.S.C. § 20301, *et seq.*, requirements for providing ballots to overseas and military voters. (Ex. 1, Affidavit, ¶¶ 3-8). The affidavit goes on to describe how Plaintiffs' 50-day window for an election cannot be accommodated

---

[3] Defendants' counsel did not receive a copy of this proposed order until it was electronically filed with the Court at 11:55 p.m. on March 15, well after the hearing had concluded. The Court later struck the proposed order. (See Doc. 17, Order striking Doc. 15).

because it creates conflict with the May 8 election date and the elections scheduled in Ecorse and Wayne. (*Id.*, ¶¶ 10-14). Moreover, ballots for an election held within this timeframe would have to be printed and available for mailing to absent voters in the next week or so. (*Id.*) However, upon information and belief, no candidates have even filed nominating petitions for the special primary election.

With respect to other alternative dates, Ms. Malerman describes in detail the difficulties that would ensue in attempting to hold a stand-alone special primary election on June 5, June 12, June 19, or June 26 of 2018. (*Id.*, ¶¶ 14-15). As explained, the use of any of these dates will place either the local unit, Wayne County, or possibly the State out of compliance with statutory deadlines, including UOCAVA. (*Id.*) The use of any of these dates would require a choice between short-shrifting candidates or the local governments required to conduct the special primary election.

In addition to the difficult timeline and almost certain inability of the local units within the 13th District to meet statutory deadlines, each local unit will incur the unexpected cost of conducting a special election. As noted in the affidavit, information provided to Ms. Malerman indicates the City of Detroit would incur significant additional expense since 274 of the 420 impacted precincts are in Detroit. (*Id.*, ¶¶ 16-17). The estimated cost of conducting a stand-alone special

3

primary election just for the precincts in Detroit is at least $700,000.00, an amount that has not been budgeted for at this time. (*Id.*, ¶ 18).

Finally, as Ms. Malerman testified to at the hearing, there is the potential for voter confusion should this Court order a new date for the special primary election and order that the special *general* election for the 13th District be held concurrent with the August 7, 2018 statewide primary election. As explained in the affidavit, the special *general* election to fill the vacant term would appear on the same ballot as the *primary* election to select candidates to run for the new full term in the 13th District. (*Id.*, ¶¶ 23-25). The potential for confusion arises because voters can only vote for candidates of one party at primary but are not so constrained in a general election. (*Id.*).

Also, selecting a new, stand-alone date for the special primary election may confuse voters as to the need to vote at the special primary. As observed by Ms. Malerman, voter turnout at the special primary election held September 5, 2012 for the vacant term in the 11th District was only 7%, whereas turnout at the August 7 primary a month earlier was almost 20%. (*Id.*, ¶¶ 26-27). The large discrepancy in turnout could have been related to confusion on the part of 11th District voters as to the need to appear and vote on September 5. Separating the primary elections for the 13th District, as Plaintiffs propose, could likewise result in voter confusion and poor turnout, neither of which is good for candidates, voters, or the elections

process. Rather, conducting the special primary and special general election for the 13th District in conjunction with the August 7 and November 6 regular election dates is an option that meets all of the statutorily mandated deadlines, and should not impose any significant additional costs or burdens on the local units since elections were already scheduled to be held on those dates. (*Id.*, ¶ 29).

As demonstrated in Defendant's initial filing and by this supplemental filing, ordering the Governor to call a new special primary election date would prejudice the communities within the 13th District. Moreover, as discussed at the hearing, Plaintiffs' lack of diligence in prosecuting this action is the primary cause of the prejudice. As noted in Ms. Malerman's affidavit, an earlier special primary election could have been accommodated at the May 8, 2018 election until March 1, 2018, without significant disruption to the election process, although with additional costs to most of the local units. (*Id.*, ¶ 9). As it stands now, Plaintiffs have simply delayed too long to request the relief they seek under the circumstances.

## CONCLUSION AND RELIEF REQUESTED

For the reasons set forth above, in his previously filed response, and at the hearing on this matter, Governor Snyder again requests that this Court deny Plaintiffs' motion for preliminary injunction.

Respectfully submitted,

Bill Schuette
Attorney General

*s/Heather S. Meingast*
Heather S. Meingast (P55439)
Denise C. Barton (P41181)
Assistant Attorneys General
Attorneys for Defendant
P.O. Box 30736
Lansing, Michigan  48909
517.373.6434
Email: meingasth@michigan.gov
P55439

Dated:  March 19, 2018

## CERTIFICATE OF SERVICE (E-FILE)

I hereby certify that on March 19, 2018, I electronically filed the above document(s) with the Clerk of the Court using the ECF System, which will provide electronic copies to counsel of record.

*s/Heather S. Meingast*
Heather S. Meingast (P55439)
Assistant Attorney General
Attorney for Defendant
P.O. Box 30736
Lansing, Michigan  48909
517.373.6434
Email: meingasth@michigan.gov
P55439
